UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| SOVEREIGN O'DELL,<br><br>    Plaintiff,<br><br>v.<br><br>KELLY SERVICES, INC.,<br>JOHN NICHOLSON,<br>TRACI HOPPER,<br>DAVID EAGER,<br>RICK PATTERSON, and<br>BERNADETTE KING,<br><br>    Defendants. | Case No. 15-13511<br>Honorable Laurie J. Michelson<br>Magistrate Judge R. Steven Whalen |

**OPINION AND ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT [107] AND SUSTAINING IN PART OBJECTIONS TO BILL OF COSTS [102]**

In 2012, Defendant Kelly Services, Inc., placed Plaintiff Sovereign O'Dell in a call-center job. While on the job, O'Dell experienced symptoms from several medical conditions. O'Dell claims that Kelly refused to provide her with requested workplace accommodations and unlawfully terminated her employment.

Right now, the merits of those claims are not before the Court. As a result of not responding to discovery and not complying with court orders regarding discovery, O'Dell has been sanctioned. O'Dell has now filed a motion asking this Court to revisit its decision to impose sanctions, challenging the amount of the sanction, and arguing that her former counsel—not her—should pay the sanction. O'Dell's arguments for revisiting the decision to sanction are without merit. But the Court will reduce the amount of the sanction.

**I.**

**A.**

Some procedural history is in order.

In November 2018, Defendant Kelly Services served discovery requests on O'Dell, who, at that time, was representing herself in this case. (ECF No. 88, PageID.1012.) When O'Dell did not respond on time, counsel for Kelly Services contacted O'Dell; O'Dell said she would respond "within the next day," December 19, 2018. (*Id.*) But by December 26, O'Dell still had not responded; so Kelly's counsel again contacted her. (*Id.*) This prompted O'Dell to produce a number of documents. (ECF No. 88, PageID.1013.) But, with respect to Kelly's interrogatories, O'Dell said that she had responded to interrogatories served by Kelly's former counsel back in July 2016, and so she did not need to respond to the November 2018 interrogatories. (*Id.*) After Kelly contacted its former counsel and learned that O'Dell had not responded to the July 2016 interrogatories, Kelly contacted O'Dell again. (*Id.*) O'Dell maintained that she had responded to Kelly's July 2016 interrogatories. (*Id.*)

Unable to resolve their dispute, Kelly sought a conference with Executive Magistrate Judge R. Steven Whalen, who is handling all pretrial matters in this case. (*Id.*) At the January 2019 conference, Magistrate Judge Whalen told Defendants to again serve their discovery requests and gave O'Dell 30 days to answer them. Kelly re-served its discovery requests on January 17, 2019. (ECF No. 88, PageID.1013.)

As the 30-day deadline approached, O'Dell informed Kelly that she had retained an attorney, Jeffrey S. Burg. Burg requested, and Kelly's counsel granted, an additional two weeks to respond to Kelly's discovery requests. (ECF No. 98, PageID.1285.) But Burg did not meet the new

deadline of March 19, 2019. (*Id.*) Burg then told Kelly's counsel he would provide discovery responses by March 22. (ECF No. 88, PageID.1014.) But he missed that deadline too.

So Magistrate Judge Whalen held another telephone conference and, following the conference, issued an order. (ECF No. 98, PageID.1285–1286.) In that April 2019 order, Magistrate Judge Whalen stated in part, "Plaintiff will comply with Defendant's outstanding discovery requests . . . within 14 days of the date of this Order. Because more than 30 days have passed since the responses were due, Plaintiff has waived any objections to the discovery requests." (ECF No. 85, PageID.977.) He added, "Plaintiff's failure to comply with this Order, or with any discovery order, *will result in sanctions*, which may include monetary sanctions and/or dismissal of the complaint." (*Id.* (emphasis added).)

In April 2019, O'Dell finally responded to Kelly's interrogatories. But her response was unsigned. (ECF No. 88, PageID.1014.) And, in Kelly's view at least, some of her answers were deficient. For instance, O'Dell failed to identify all the lawsuits she had previously filed. (ECF No. 88, PageID.1088.)

In May and June 2019, Kelly took O'Dell's deposition. In response to Kelly's question of whether there were unproduced documents responsive to a discovery request, O'Dell stated, "I doubt it, but anything is possible." (ECF No. 88, PageID.1090.) When Kelly inquired into prior lawsuits (also the subject of an interrogatory), this exchange occurred:

> Q. What have you done to determine whether or not there are additional lawsuits that you filed?
> A. I've tried to remember.
> Q. Did you search for documents related to the lawsuits?
> A. I don't keep documents.
> Q. Have you searched through your e-mails to determine whether or not there are additional lawsuits?

> A. I haven't. But I can tell you that Google took back all the space they gave so my mailboxes were pretty much wiped out.
>
> Q. Have you gone down to the courthouses to see if you can look up what lawsuits you filed?
>
> A. No.
>
> Q. So you just tried to remember the lawsuits but you haven't taken any other actions to try to determine what lawsuits you filed?
>
> A. No.

(ECF No. 88, PageID.1092.)

During the deposition, Kelly also probed the basis for O'Dell's damages claim and learned that O'Dell's search for responsive documents may have been incomplete:

> Q. So you're claiming that you were damaged because of actions of Kelly Services as it relates to your employment at Metro Community Development; correct?
>
> A. Yes.
>
> Q. You have an obligation to produce evidence to support that, if you have any in your possession. What evidence do you have in your possession?
>
> A. I wouldn't know.
>
> Q. How do you not?
>
> A. If I knew that, I would have just said yes [to your earlier question] instead of maybe it's possible [that I have evidence].
>
> Q. What efforts have you made to search for the evidence to support that proposition?
>
> A. I haven't because I did not realize that that would be part of this claim. I've made zero effort for that.

(ECF No. 88, PageID.1095–1096.)

Finally, when Kelly asked if there were documents that would refresh O'Dell's recollection as to her damages claim, O'Dell testified, "I believe that I have notes from when I was proceeding pro se, so I would have had more notes about that so I would need to refer to those." (ECF No. 88, PageID.1098.) But, said O'Dell, the notes were not accessible because they were in a storage area in her home. (*Id.*)

4

Based on O'Dell's deposition testimony, Kelly believed that O'Dell had not produced all documents responsive to its discovery requests. So on June 3, 2019, Kelly asked O'Dell's counsel to produce the notes in the storage area and documents relating to her claim that she was fired from Metro Community Development (or any other employer) because of actions of Kelly Services. (ECF No. 88, PageID.1101.) Kelly's counsel demanded the documents be produced by June 5, 2019. (*Id.*)

On the afternoon of June 5, Burg responded, "Sovereign is attempting to unearth the documents today and tomorrow morning. I'll let you know as soon as I hear from her." (ECF No. 88, PageID.1100.) Burg's response was unacceptable to Kelly: "These discovery requests have been pending since November 2018, and Plaintiff just disclosed for the first time on Monday—during her third day of depositions, and after I traveled to Michigan for the second time—that she has these notes. . . . Additionally, the emails regarding her allegedly being terminated because of Kelly's actions are also responsive. . . . This failure to cooperate in discovery, despite being given multiple opportunities and warnings from the Court, is objectionable and we will be requesting sanctions from the Court." (ECF No. 88, PageID.1100.)

Kelly followed through: it moved to have this case dismissed as a Rule 37 sanction. (ECF No. 88.)

**B.**

Kelly's motion was partly successful.

In February 2020, Magistrate Judge Whalen issued a report and recommendation on Kelly's Rule 37 motion. He found that O'Dell had "repeatedly disregarded discovery deadlines, even after those dates were extended and even after the Court took the time to hold telephonic conferences in which her obligations were clearly explained." (ECF No. 98, PageID.1288.) He

added, "Indeed, even after she retained counsel, it was revealed at her depositions that she in fact possessed responsive documents in some "storage area" in her home but failed to search for them." (ECF No. 98, PageID.1289.) But Magistrate Judge Whalen thought "dismissal would be excessive" and thus recommended a lesser sanction: O'Dell would pay Kelly's attorney's fees associated with the Rule 37 motion. (ECF No. 98, PageID.1291–1292.)

Neither party objected to that recommendation, and so this Court adopted it. (ECF No. 98.) In doing so, this Court ordered what Magistrate Judge Whalen had recommended: "Plaintiff shall pay Defendants their reasonable costs and attorney's fees expended in bringing [the Rule 37] motion," "Defendants shall submit a bill of costs to the Court," and "Plaintiff has 14 days to file a response to the bill of costs[.]" (ECF No. 100, PageID.1299.)

## C.

The parties then proceeded just as this Court ordered.

In April 2020, Kelly filed its bill of costs. Kelly stated—and backed up its statements with invoices and affidavits—that it incurred $10,385 in attorney's fees in preparing its Rule 37 motion and the bill of costs. (ECF No. 101.) O'Dell, through Burg, objected to the bill. (ECF No. 102.) O'Dell's counsel argued in part, "Defendant's Bill of Costs seeks 24.5 attorney hours to be reimbursed for the preparation of its unsuccessful motion to dismiss. This is excessive. . . . For an experienced attorney, this is far too long." (ECF No. 102, PageID.1326.)

**D.**

But then things took another turn.

About two months after Plaintiff filed her response to the bill of costs, O'Dell's counsel sought to withdraw his representation. (ECF No. 104.) A bit later, Magistrate Judge Whalen permitted Burg to withdraw. (ECF No. 106.)

Meanwhile, O'Dell had filed a pro se motion pursuant to Rule 60. (ECF No. 107; *see also* ECF No. 105.) In her Rule 60 motion, O'Dell argued that her non-compliance in the discovery process was not nearly as bad as Kelly made it seem. (ECF No. 107.) In seeking sanctions, Kelly argued that O'Dell testified that she had responsive documents that she had not produced. But, O'Dell explains, she merely testified that it was "possible" that she had notes about the litigation. (*Id.* at PageID.1345.) And, says O'Dell, she later checked the storage area that she referenced in her deposition, and there were no notes. (*Id.* at PageID.1345.) Further, O'Dell argues, even if she had prepared notes for litigation, they would be akin to work product, and she would not be required to produce them. (*Id.* at PageID.1343.) As for other documents, O'Dell says that they were already in Kelly's possession. (*Id.* at PageID.1342.)

Via her Rule 60 motion, O'Dell also seeks to shift blame to her former counsel. For instance, O'Dell says that after her deposition, she gave Burg access to her Google Drive that had documents related to this case but that Burg did not pass that along to Kelly. (ECF No. 107, PageID.1344.) And, says O'Dell, Burg failed to oppose Kelly's Rule 37 motion by raising the work-product argument. (*Id.* at PageID.1344.) Further, she says that she expected Burg to object to the Magistrate Judge's sanction recommendation and that she only learned that he failed to do so after her electronic-docket access was restored. (*Id.* at PageID.1344.) O'Dell asks that the

7

$10,385 sanction be imposed against her former counsel, rather than her. (*Id.* at PageID.1346.) She further indicates that she lacks the financial means to pay the sanction. (*Id.* at PageID.1342.)

## II.

### A.

For the moment, the Court sets to the side O'Dell's arguments that the amount of the sanction is too high and that her former counsel should pay it. The Court focuses first on O'Dell's implication that she should not have been sanctioned at all or that the sanction should have been something other than having to pay the attorney's fees associated with Kelly's Rule 37 motion.

As an initial matter, O'Dell's Rule 60 motion may be procedurally improper for two reasons. For one, O'Dell failed to object to the Magistrate Judge's report and, as warned by the Magistrate Judge, "[f]ailure to file specific objections constitutes a waiver of any further right of appeal." (ECF No. 98, PageID.1293.) Her Rule 60 motion is arguably an end run around her waiver. For two, it appears that Rule 60 is an ill fit for the circumstances. O'Dell relies on Rule 60(d)(3) and three provisions of Rule 60(b). But paragraph (b) refers to "a final judgment, order, or proceeding" (emphasis added) and subparagraph (d)(3) refers to "a judgment." The Court has entered no judgment of attorney's fees or a final order in this case. *See* Fed. R. Civ. P. 60(b) advisory committee's note to 1946 amendment ("[T]he qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which Rule 60(b) affords relief.").

The Court need not resolve these issues. Assuming that O'Dell may proceed under Rule 60, she has not shown that it warrants revisiting the decision to impose the sanction of paying Kelly's attorney's fees. (Again, the amount and who should pay it will be addressed later.)

O'Dell relies on Rule 60(b)(3) and Rule 60(d)(3). They are similar: Rule 60(b)(3) permits relief from a final order for fraud, "misrepresentation, or misconduct by an opposing party" and

Rule 60(d)(3) permits relief "for fraud on the court." But the Court does not believe Kelly committed fraud or made a misrepresentation that warrants setting aside the sanctions order. While at some points during her deposition O'Dell said it was "possible" that she had relevant documents, during at least one point she said, "I believe that I have notes from when I was proceeding pro se [in this case]. . . . I know there are things in front of [the notes] and on top of them [in a storage area], so the way they are situated, they are inaccessible at this time. But I do know that I have notes." (ECF No. 88, PageID.1098.) So it was not plainly false for Kelly to argue, "O'Dell . . . admitted under oath that she possessed, but did not produce, a number of documents responsive to discovery and specifically relating to this case." (ECF No. 96, PageID.1272.) If O'Dell thought these notes were work-product, they still needed to be disclosed on a privilege log. *See* Fed. R. Civ. P. 26(b)(5)(A). And even if Kelly exaggerated a bit, O'Dell's admission at her deposition was not the sole reason for sanctions. As set out above, there have been numerous discovery failings. (*See* ECF No. 98, PageID.1284–1285.)

O'Dell also cites Rule 60(b)(1), which allows relief from a final order for "mistake, inadvertence, surprise, or excusable neglect." She does not explain how this provision of Rule 60 applies to her circumstances. To the extent that she asserts that her failure to respond to certain discovery requests was simply a mistake or excusable neglect, the Court again notes the history of non-compliance. (*See* ECF No. 98, PageID.1284–1285.) And a significant portion of that non-compliance was O'Dell's personally, and, in any event, the usual rule is that the client suffers from her attorney's misdeeds. *Link v. Wabash R. Co.*, 370 U.S. 626, 633–34 (1962) ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed

9

bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.'"). Also, while mistake or excusable neglect might prevent the severe sanction of dismissal, it does not preclude a monetary sanction to reimburse the other party who incurred legal fees as a result of the mistake or neglect.

As for Rule 60(b)(6), the Court is not persuaded that the circumstances here warrant invoking that limited catchall. *See Blue Diamond Coal Co. v. Trustees of UMWA Combined Ben. Fund*, 249 F.3d 519, 524 (6th Cir. 2001) ("[C]ourts must apply Rule 60(b)(6) relief only in unusual and extreme situations where principles of equity mandate relief." (internal quotation marks omitted)). Again, the sanction was not imposed based on a single instance of non-compliance with the discovery rules.

So, as Magistrate Judge Whalen recommended, and as this Court ordered in accepting his recommendation, "pursuant to Fed. R. Civ. P. 37(b)(2)(C), Plaintiff shall pay Defendants their reasonable costs and attorney's fees expended in bringing" their Rule 37 motion.

**B.**

That leaves the issue of the amount of those reasonable costs and attorney's fees and whether O'Dell, her former counsel, or both should pay the sanction.

The Court has reviewed Kelly's bill of costs and supporting documentation and will reduce the amount O'Dell (or her counsel) is required to pay for Kelly's briefs. Kelly spent 13.4 hours to prepare its Rule 37 motion and opening brief. (ECF No. 101, PageID.1312.) That brief was 18 pages, included a detailed account of the procedural history, required legal research, and required the preparation of several exhibits, including excerpts of depositions. (*See* ECF No. 88.) In contrast, Kelly's reply brief was only seven pages, did not require extensive new factual or legal development, and had no exhibits. (*See* ECF No. 96.) Yet Kelly seeks reimbursement for the 10

hours it took to prepare its reply brief—just 3.4 hours less than its more-involved opening brief. (ECF No. 101, PageID.1313.) While the Court does not doubt that Kelly's counsel in fact took that much time to prepare the brief, and does not find that amount of time unreasonable, in light of the opening brief it seems that Kelly's counsel could have spent less time on their reply. Moreover, the issue here is the amount of a sanction, not the proper amount to bill, and O'Dell has indicated to the Court she simply lacks the financial means to pay $10,000 (it is unclear what means her former counsel has to pay). So the Court will only require O'Dell to pay for eight of the hours Kelly's counsel took to prepare the reply brief.

The Court will also reduce the amount that O'Dell or her counsel has to pay for Kelly's preparation of its bill of costs. Kelly's counsel spent 9.9 hours to prepare the bill. (ECF No. 101, PageID.1314.) Preparing the bill was undoubtedly tedious, but it is not a sophisticated task requiring involved legal research; and much of the preparation could have been done by a paralegal. And the idea of collecting fees for collecting fees is not the most palatable, either. And, again, the Court factors in O'Dell's ability to pay in imposing sanctions. So the Court will only incorporate 4.9 of the hours Kelly's counsel took to prepare the bill of costs.

In all then, the Court will deduct seven hours of time that Julia Pozo spent in connection with the Rule 37 motion and bill of costs (from the billings, Pozo was the attorney who did the overwhelming majority of work on the motion). Her rate is $300 per hour, so the Court will deduct $2,100 from the total of $10,385 for a total sanction of $8,285.

So that leaves the issue of who should pay—O'Dell, her former counsel, or both. As documented above, some of the discovery issues arose before O'Dell retained counsel and one of the bases for the sanction was O'Dell's deposition testimony. And, as also noted above, the usual

rule is that a client is responsible for her attorney's conduct. Indeed, Magistrate Judge Whalen's order directs the sanction against "Plaintiff" and does not reference her counsel as well.

* * *

Thus, O'Dell is to pay Kelly $8,285. Half of this amount, $4,142.50, must be paid to Kelly by December 18, 2020. The other half is due before entry of final judgment in this case. If O'Dell prevails in this case, the outstanding amount can be deducted from her award.

SO ORDERED.

Dated: September 22, 2020

                                                s/Laurie J. Michelson
                                                LAURIE J. MICHELSON
                                                UNITED STATES DISTRICT JUDGE